ELECTRONICALLY FILED
Apr 10 2019
U.S. DISTRICT COURT
Northern District of WV

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF WEST VIRGINIA

HYMAN, et al.,

           Plaintiffs,

v.                                    CASE NO. 1:19-cv-75

CITY OF SALEM,

           Defendant.

_____/

### PLAINTIFFS'MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION

      Plaintiffs, two circulators of the initiative at issue here and a voter who signed and supported that initiative, bring this facial and as-applied First and Fourteenth Amendment challenge to Defendant's decision to remove Plaintiffs' initiative, *see* Exhibit 1 attached to Verified Complaint, from the City of Salem's June 4, 2019 election ballot. Plaintiffs seek both prospective relief and money damages from Defendant, which acted pursuant to a policy or custom, under 42 U.S.C. § 1983. *See Monell v. Department of Social Services*, 436 U.S. 658 (1978). Because the June 4, 2019 election is closely approaching and exclusion of Plaintiffs' initiative from that ballot will cause irreparable harm to Plaintiffs and voters in Salem, Plaintiffs have moved under Federal Rule of Civil Procedure 65 for preliminary relief.

      As explained below, Defendant's action is both facially unconstitutional and unconstitutional as-applied under the First and Fourteenth Amendments for two separate reasons: (1) it constitutes a content-based restriction on speech that cannot pass strict scrutiny; and (2) it acts as an impermissible prior restraint that fails to abide by the First and Fourteenth

1

Amendment's procedural safeguards. Defendant should accordingly be temporarily restrained and/or preliminarily enjoined from removing Plaintiffs' initiative from the City of Salem June 4, 2019 election ballot.

## Facts

On or about January 14, 2019, Plaintiffs Hyman and Thompson presented to Defendant an initiative with sufficient supporting signatures calling for the decriminalization of marijuana possession in the City of Salem.  *See* Verified Complaint at ¶ 2; Exhibit 1 attached to Verified Complaint. Plaintiffs' initiative satisfied all of the procedural requirements prescribed by law, was supported by a sufficient number of voters' signatures, and fully complied with West Virginia's and the City of Salem's requirements for placing an initiative on Defendant's June 4, 2019 election ballot.  *See* Verified Complaint at ¶ 3.

On or about February 12, 2019, Plaintiffs were officially informed by Defendant at a regularly scheduled city council meeting that their initiative satisfied West Virginia's and the City of Salem's requirements for placing an initiative on Defendant's June 4, 2019 election ballot and that their initiative would therefore be included on the June 4, 2019 election ballot in Salem, West Virginia. *Id*. at ¶ 4. Plaintiffs were six weeks later orally informed by Defendant's attorney that Defendant would change its mind and that Plaintiffs' initiative would not be included on the June 4, 2019 election ballot. *Id*. at ¶ 5.  Plaintiffs have not been formally notified that their initiative has been removed from the ballot, *id*. at ¶ 6, but on April 8, 2019 Plaintiffs' lawyer was orally informed by Defendant's lawyer that Defendant had in fact changed its mind and that Plaintiffs' initiative would not be included on Defendant's June 4, 2019 election ballot. *Id*. at ¶ 7.

Defendant's belated decision to remove Plaintiffs' initiative from the June 4, 2019 election ballot is ostensibly premised on a memorandum, dated March 28, 2019, sent by an attorney in the office of the West Virginia Secretary of State to Defendant's attorney. *See id*. at ¶ 8; Exhibit 2 attached to Verified Complaint.  This memorandum explained that the Secretary of State although the Secretary "does not have authority to enforce or officially interpret the provisions discussed below," it could "offer an informal interpretation for consideration by interested parties."  *See* Verified Complaint at ¶ 11. The Secretary opined that Plaintiffs' proposed decriminalization ordinance, presented to Defendant as an initiative, would "[l]ikely" "violate the WV Constitution," since marijuana possession remains criminal under state law. *Id*. at ¶ 15.  The Secretary then concluded by reiterating that "[t]he opinions expressed in this memorandum are non-binding and have no legal effect. This memorandum is provided merely for municipal officials' consideration in the instant case." *Id*. at ¶ 16.

Defendant at all relevant times in this matter had in place and still has in place a proper Charter provision enacted pursuant to W.Va. Code § 8-12-4. *Id*. at ¶ 12.  West Virginia Code § 8-12-4 authorizes cities, like Defendant, to provide for popular initiatives:

> Any city may by charter provision provide for any or all of the following:
>
> (1) The initiation of ordinances by petition bearing the signatures, written in their own handwriting, of not less than ten percent of the qualified voters of such city; [and]
>
> (2) The submission to the qualified voters of such city of a proposed ordinance at a regular municipal election or special municipal election upon petition bearing the signatures, written in their own handwriting, of not less than ten percent of the qualified voters of such city or upon resolution of the governing body of such city;

Plaintiffs' initiative, meanwhile, was procedurally proper, was supported by a sufficient number of signatures, had been certified by Defendant for the June 4, 2019 election ballot.  Verified

Complaint at ¶ 4. Defendant's decision to remove Plaintiffs' initiative from the June 4, 2019 election ballot can therefore only be understood as being based on the content and/or subject matter of Plaintiff's initiative. Defendant believed its content contradicted state law and removed it from the ballot. Verified Complaint at ¶ 19.

## Argument

"A district court deciding whether to grant a preliminary injunction must consider the following four factors: '(1) the likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied, (2) the likelihood of harm to the defendant if the requested relief is granted, (3) the likelihood that the plaintiff will succeed on the merits, and (4) the public interest.'" *Manning v. Hunt*, 119 F.3d 254, 263 (4th Cir. 1997).[1]

### I. Plaintiffs Are Likely to Succeed on the Merits Because Defendant Made a Content-Based Decision Without Employing Procedural Safeguards.

Popular initiatives and the petitioning process constitute "core political speech." "In *Meyer v. Grant,* [486 U.S. 414, 421 (1988),] a unanimous Supreme Court determined that petitions 'of necessity involve[ ] both the expression of a desire for political change and a discussion of the merits of the proposed change.' Indubitably, restrictions on this sort of 'core political speech' can affect the ultimate goal of ballot access." *Libertarian Party of Virginia v. Judd*, 718 F.3d 308, 314 (4th Cir. 2013). "[A]lthough the Constitution does not require a state to create an initiative procedure, if it creates such a procedure, the state cannot place restrictions on its use that violate the federal Constitution …." *Taxpayers United for Assessment Cuts v. Austin*, 994 F.2d 291, 295 (6th Cir. 1993). Restrictions on popular initiatives and the petitioning process

---

[1] This four-factor formula for issuing a temporary restraining order is essentially the same. *See Bryant v. Matvieshen*, 904 F. Supp.2d 1034, 1042 (E.D. Cal. 2012).

must therefore comply with the First and Fourteenth Amendments. *See Buckley v. American Constitutional Law Foundation*, 525 U.S. 182 (1999) (applying First Amendment to invalidate restrictions on circulation of initiatives).

When a restriction on speech is content-based, the Supreme Court has made clear that it must pass strict judicial scrutiny. In *Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015), the Court stated that "[c]ontent-based laws—those that target speech based on its communicative content—are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." Additionally, in *Freedman v. Maryland*, 380 U.S. 51 (1965), the Court ruled that prior restraints on speech must not only pass substantive scrutiny, they must also be accompanied by "procedural safeguards." As explained by the Fourth Circuit:

> In *Freedman,* the Supreme Court set forth three procedural safeguards for a speech licensing scheme: "(1) any restraint prior to judicial review can be imposed only for a specified brief period during which the status quo must be maintained; (2) expeditious judicial review of that decision must be available; and (3) the censor must bear the burden of going to court to suppress the speech and must bear the burden of proof once in court."

*Covenant Media of South Carolina v. City of North Charleston*, 493 F.3d 421, 431 (4th Cir. 2007) (citation omitted).

A facial First Amendment challenge offers an appropriate mechanism for challenging a prior restraint. "[A] facial challenge lies whenever a licensing law gives a government official or agency substantial power to discriminate based on the content or viewpoint of speech …." *Lakewood v. Plain Dealer*, 486 U.S. 750, 759 (1988). Plaintiffs accordingly bring this First Amendment challenge both facially and as-applied.

A. **Defendant's Decision Was Content-Based and Cannot Survive Strict Scrutiny.**

Decisions to prohibit initiatives or to remove them from ballots based on initiatives content and subject matter are subject to strict scrutiny. In *Wyman v. Secretary of State*, 625 A.2d 307, 309 (Me. 1993), for example, Maine attempted what Defendant has done here; prevent an otherwise proper initiative from being placed on the ballot because of its content. Wyman had submitted an initiative only to have it rejected by Maine's Secretary of State: "the Secretary informed Wyman that he was disapproving circulation to the voters of the petition form as presented because the initiative if enacted would, in his opinion and that of the Attorney General, be unconstitutional." *Id*. The Supreme Judicial Court of Maine ruled that vesting this sort of authority in an executive officer violated the First Amendment; it could not pass strict scrutiny:

> The potential invalidity of the subject of an initiative petition, however, is not a sufficient reason to pre-empt the petition process itself or to bar the discussion of the issues raised in the petition. … <u>Because the petition process is protected by the first amendment and the Secretary has advanced no compelling interest in executive oversight of the content of the petition prior to its circulation for signature</u>, his refusal to furnish the petition form based on the content of the proposed legislation impermissibly violated Wyman's rights protected by the first amendment.

*Id*. at 312 (emphasis added).

By way of contrast, content-neutral restrictions on initiatives, such as the number of topics that may be included or the number of words used, can be proper. See, e.g., *Biddulph v. Mortham*, 89 F.3d 1491, 1493 (11th Cir. 1996) (sustaining content-neutral Florida requirements that explanatory statements not exceed 75 words and titles not exceed 15 words); *Committee to Impose Term Limits on the Ohio Supreme Court and to Preclude Special Legal Status for Members of and Employees of the Ohio General Assembly v. Ohio Ballot Board*, 885 F. 3d 443, 446 (6th Cir. 2018) (sustaining Ohio's limit on the number of subjects that may be included in single initiative).

Here, there can be little doubt that Defendant's decision to remove Plaintiff's initiative was because it potentially contradicted state law. That determination necessarily required considering the content and/or subject matter of the initiative. And that means it was content-based. In *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2227 (2015), Justice Thomas's majority opinion reiterated the distinction between content-based and content-neutral restrictions on speech:

> Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed. This commonsense meaning of the phrase 'content based' requires a court to consider whether a regulation of speech 'on its face' draws distinctions based on the message a speaker conveys. Some facial distinctions based on a message are obvious, defining regulated speech by particular subject matter, and others are more subtle, defining regulated speech by its function or purpose. Both are distinctions drawn based on the message a speaker conveys, and, therefore, are subject to strict scrutiny.[2]

Applying this commonsense approach to the sign code at issue, Justice Thomas found it plainly and facially content-based:

> It defines 'Temporary Directional Signs' on the basis of whether a sign conveys the message of directing the public to church or some other 'qualifying event.' It defines 'Political Signs' on the basis of whether a sign's message is 'designed to influence the outcome of an election.' And it defines 'Ideological Signs' on the basis of whether a sign 'communicat[es] a message or ideas' that do not fit within the Code's other categories.

*Id*. Using this same commonsense approach here, Defendant's consideration of the "subject matter" of Plaintiffs' initiative means that Defendant's decision was content-based.

Far from following neutral and concrete requirements, Defendant here took it upon itself to resolve a complicated legal issue. Complex legal conclusions are necessarily content based; they are the antitheses of clear, concrete and neutral principles. The Supreme Court's recent

---

[2] Justice Thomas added in *Reed* that the Court's "precedents have also recognized a separate and additional category of laws that, though facially content neutral, will be considered content-based regulations of speech: laws that cannot be "justified without reference to the content of the regulated speech," or that were adopted by the government "because of disagreement with the message [the speech] conveys." *Id*. (citation omitted).

decision in *Minnesota Voters Alliance v. Mansky*, 138 S. Ct. 1876 (2018), makes this clear -- even in the context of subsequent punishment imposed on speech in a non-public forum.[3] There, Minnesota forbad any person from wearing a "political badge, political button, or other political insignia … at or about the polling place." *Id*. at 1883. "Minnesota election judges—temporary government employees working the polls on Election Day—have the authority," the Supreme Court explained, "to decide whether a particular item falls within the ban." *Id*. While the election judges could not restrain the offensive attire, they were empowered to initiate punitive proceedings after-the-fact.

The Supreme Court ruled that because Minnesota failed to "articulate some sensible basis for distinguishing what may come in from what must stay out." *id*. at 1888, its law facially violated the First Amendment. The Court explained:

> the unmoored use of the term "political" in the Minnesota law, combined with haphazard interpretations the State has provided in official guidance and representations to this Court, cause Minnesota's restriction to fail even this forgiving test [applied to speech in non-public fora].

*Id*. Of particular note, the Court pointed to the legal nature of the distinctions Minnesota asked its election judges to draw; they "pose[d] riddles that even the State's top lawyers struggle to solve." *Id*. at 1891.

Defendant's conclusion that the substance of Plaintiffs' initiative violated West Virginia law mirrors the problem described by the Supreme Court in *Mansky*. And it fails First Amendment analysis for the same reason. Defendant, like Minnesota's elections officials, tried to unilaterally answer legal "riddles that even the State's top lawyers struggle to solve." This sort

---

[3] Because prior restraints are particularly noxious, they are invalid even when subsequent punishment is permitted. *See Kunz v. New York*, 340 U.S. 290, 295 (1951). Consequently, because subsequent punishment using the standard in *Mansky* was impermissible, a prior restraint under this same kind of standard would necessarily be unconstitutional.

of content-based discrimination cannot survive even minimal First Amendment review in a non-public forum.

Because Defendant's decision was content-based, the burden is on Defendant to justify its action under strict scrutiny. It must demonstrate that removal of Plaintiffs' initiative from the ballot was absolutely necessary to achieve a compelling interest. It cannot do so. Its unilateral executive decision was far from necessary. There is no reason why Defendant could not allow the vote to go forward and then assess the legality of the initiative's ordinance after (and if) it passed.

### B. Defendant's Action Was an Impermissible Prior Restraint.

Even assuming that Defendant could meet strict scrutiny, its action still fails First Amendment scrutiny. Its action fails the First Amendment both facially[4] and as-applied for another, even more basic reason. It constitutes an impermissible prior restraint.

"The clearest form of prior restraint arises in those situations where the government limitation, expressed in statute, regulation, or otherwise, undertakes to prevent future publication or other communication without advance approval of an executive official." *Time Film Corp. v. City of Chicago*, 365 U.S. 43, 55 n.2 (1961) (citation omitted). "Any system of prior restraints of expression comes to this Court bearing a heavy presumption against its constitutional validity." *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963). In order to overcome this "heavy presumption," not only must a content-based restriction satisfy strict scrutiny, it must also satisfy

---

[4] Prior restraints are subject to facial First Amendment challenges just as content-based restrictions are subject to facial First Amendment challenges. *See, e.g.*, *FW/PBS v. City of Dallas*, 493 U.S. 215, 223 (1990) ("Although facial challenges to legislation are generally disfavored, they have been permitted in the First Amendment context where the licensing scheme vests unbridled discretion in the decision maker and where the regulation is challenged as overbroad.").

the First Amendment's procedural safeguards applied to prior restraints. *Covenant Media of South Carolina v. City of North Charleston*, 493 F.3d 421, 431 (4th Cir. 2007). And before these procedural safeguards are even considered, it must be established that the executive censor has not exercised any measure of discretion. Discretion is the death-knell of executive license.

        **1.**     **Defendant Exercised Discretion.**

The First Amendment's demand that licensing and permitting processes employ established and objective standards is long-standing. In *Shuttlesworth v. City of Birmingham*, 394 U.S. 147 (1969), for example, the Supreme Court struck down Birmingham's permit requirement for demonstrations because it "conferred upon the City Commission virtually unbridled and absolute power to prohibit any 'parade,' 'procession,' or 'demonstration' on the city's streets or public ways." *Id*. at 150 (footnote omitted). The Court stated:

> This ordinance as it was written fell squarely within the ambit of the many decisions of this Court over the last 30 years, holding that a law subjecting the exercise of First Amendment freedoms to the prior restraint of a license, without narrow, objective, and definite standards to guide the licensing authority, is unconstitutional.

*Id*. at 150-51 (footnote omitted).

In *Forsyth County v. Nationalist Movement*, 505 U.S. 123, 131 (1990), which invalidated a parade permit requirement, the Court reiterated this principle: "A government regulation that allows arbitrary application is 'inherently inconsistent with a valid time, place, and manner regulation because such discretion has the potential for becoming a means of suppressing a particular point of view.'" (Citations omitted). "To curtail that risk, 'a law subjecting the exercise of First Amendment freedoms to the prior restraint of a license' must contain 'narrow, objective, and definite standards to guide the licensing authority.'" *Id*. (citations omitted).

And in *City of Lakewood v. Plain Dealer*, 486 U.S. 750, 757 (1988), which invalidated as an impermissible prior restraint a city's permitting scheme for news racks placed on public

10

property, the Court stated: "<u>At the root of this long line of precedent is the time-tested knowledge that in the area of free expression a licensing statute placing unbridled discretion in the hands of a government official or agency constitutes a prior restraint</u> and may result in censorship." (Citations omitted and emphasis added). It continued:

> And these evils engender identifiable risks to free expression that can be effectively alleviated only through a facial challenge. … [T]he <u>mere existence of the licensor's unfettered discretion, coupled with the power of prior restraint, intimidates parties into censoring their own speech, even if the discretion and power are never actually abused</u>.

*Id*. (emphasis added).

Defendant's decision to remove Plaintiffs' initiative from the June 4, 2019 election ballot was not limited in any way. No state law directed Defendant's authority. The Secretary of State advised Defendant that its conclusion that Plaintiffs' initiative might contradict state law had no legal effect. Defendant took it upon itself to remove the initiative. It exercised pure discretion.

### 2. De Novo Judicial Review Was Not Made Available.

Compounding the violation of the First Amendment in this case is the limited review available to those (like Plaintiffs) whose speech is restrained. In *City of Lakewood v. Plain Dealer*, 486 U.S. at 771, the Supreme Court ruled that Ohio's procedure authorizing writs of mandamus was not sufficient to save an ordinance that vested discretion in an executive officer to decide who could place news racks on public property: "that review comes only after the mayor and the City Council have denied the permit. … Even if judicial review were relatively speedy, such review cannot substitute for concrete standards to guide the decision-maker's discretion."

Supreme Court and lower court precedent make clear that *Freedman v. Maryland*, 380 U.S. 51 (1965), requires that a state must not only limit the discretion afforded executive agents,

it must also provide prompt, de novo[5] judicial review. *See Bose v. Consumers Union, Inc.*, 466 U.S. 485, 508 n.27 (1984) ("The simple fact is that First Amendment questions of 'constitutional fact' compel this Court's de novo review."); <u>*Nightclubs, Inc. v. City of Paducah*, 202 F.3d 884, 892 (6th Cir. 2000)</u> ("theoretical possibility of expeditious judicial review is not constitutionally sufficient. A guarantee of prompt judicial review is necessary ...."); *Universal Film Exchange, Inc. v. City of Chicago*, 288 F. Supp. 286, 293 (N.D. Ill. 1968) ("Since *Freedman v. State of Maryland*, it has been clear that only a de novo judicial determination that a motion picture is unprotected by the First Amendment can justify a valid final restraint of a motion picture in advance of exhibition.").

Like Ohio, West Virginia only provides mandamus review for those whose initiatives have been removed by executive officials from local election ballots. Under West Virginia law, a speaker's only recourse when a city removes his or her otherwise properly prepared and presented initiative from a city's election ballot is to seek mandamus. *See State ex rel. Horne v. Adams*, 154 W.Va. 269, 175 S.E.2d 193 (1970). Courts are authorized to issue mandamus only when a government official fails to perform a legal duty and clearly violates state law. *See State ex rel. Ray v. Skaff*, 190 W.Va. 504, 438 S.E.2d 847 (1993). Mandamus review is not de novo and will not and cannot correct all legal and factual mistakes. *See Burnell v. City of Morgantown*, 210 W.Va. 506, 558 S.E.2d 306 (2001).

As recently ruled by Judge Sargus sitting in the Southern District of Ohio, mandamus is not an adequate substitute for the de novo judicial review required of executive decisions

---

[5] *See* Henry P. Monaghan, *First Amendment "Due Process*," 83 HARV. L. REV. 518, 526 (1970) ("*Freedman* requires only that the court make a separate, independent judgment on the administrative record."); Note, Allan Tanambaum, *"New and Improved": Procedural Safeguards for Distinguishing Commercial From Non-Commercial Speech*, 88 COLUM. L. REV. 1821, 1825 n.3 (1988) ("*Freedman* seems to insist on de novo judicial review.").

restraining speech. *See Schmitt v. Husted*, 341 F.Supp.3d 784 (2018), *converted to permanent injunction*, 2019 WL 517666 (S. D. Ohio 2019). In *Schmitt*, 341 F. Supp.3d 784, the Court invalidated an Ohio election board's decision to remove a marijuana decriminalization initiative (much like the present one) even though Ohio law authorized mandamus review. The Court stated:

> the Court finds no legitimate state interests in preventing an adequate legal remedy for petitioners denied ballot access by a board of elections. While the availability of mandamus relief is essentially a judicially imposed remedy when the law does not otherwise provide one, the high burden on petitioners to prove entitlement to an extraordinary remedy is no substitute for *de novo* review of the denial of a First Amendment right.

341 F. Supp.3d at 791. The Court further explained why mandamus was not sufficient:

> Ohio's regulatory scheme unreasonably infringes on Plaintiffs' First Amendment rights by allowing an executive board to determine disputed legal and even constitutional issues, thereby potentially blocking initiatives from the ballot, and then denying rejected petitioners a right to review. No legitimate state interest is protected by a lack of appellate review. Similarly, Ohio voters are unlikely to suffer cognizable harm from Plaintiffs' access to the ballot.

341 F. Supp.3d at 792.

For these same reasons, mandamus review in West Virginia is not sufficient to adequately cabin local election officials' discretion. Defendant's decision to remove Plaintiffs' initiative was unconstitutional under the First and Fourteenth Amendments.

### 3. Defendant Does Not and Did Not Employ Procedural Safeguards.

State and local law provide no procedural safeguards within the meaning of the First and Fourteenth Amendments. Neither West Virginia law nor local law requires that a city first obtain judicial approval before exercising discretion to remove an otherwise properly proposed initiative from that city's election ballot. *See Freedman v. Maryland*, 380 U.S. 51 (1965). Not only is there no de novo judicial review and no objective, content-neutral standards to guide

executive censors, the burden is not placed on the executive to maintain the status quo and seek judicial approval before removing an initiative from the ballot.

As explained by the Fourth Circuit:

> In *Freedman,* the Supreme Court set forth three procedural safeguards for a speech licensing scheme: "(1) any restraint prior to judicial review can be imposed only for a specified brief period during which the status quo must be maintained; (2) expeditious judicial review of that decision must be available; and (3) the censor must bear the burden of going to court to suppress the speech and must bear the burden of proof once in court."

*Covenant Media of South Carolina v. City of North Charleston*, 493 F.3d 421, 431 (4th Cir. 2007) (citation omitted).

Defendant complied with none of these requirements. The status quo was that Plaintiffs' initiative had been approved for the ballot. This was not maintained; rather Plaintiffs' initiative was summarily removed without formal notice. Plaintiffs only discovered this fact through oral communications with Defendant's lawyer, communications which were not confirmed until April 8, 2019. Next, Defendant did not seek expeditious judicial review. It left the Plaintiffs in the breach. They were forced to challenge the change in status quo. Last, Defendant bore no burden of going to court to suppress the speech. *Freedman*'s procedural safeguards were breached across the board.

### II.     Plaintiffs Will Experience Irreparable Harm.

Plaintiffs are threatened with irreparable injury should their initiative not be presented to voters on June 4, 2019. Any impediment on First Amendment rights, even for brief periods, causes irreparable harm. *See Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."). The June 4, 2019 is closely approaching and injunctive relief is needed on an interim basis to restore the status quo and avoid Plaintiffs' irreparable injury.

### III. Defendant Is Threatened With No Injury.

Defendant will suffer no injury should the Court order the restoration of Plaintiffs' initiative to the June 4, 2019 ballot. According to West Virginia's Municipal Election Calendar for 2019, candidates' filings do not close until April 16, 2019. *See* West Virginia Municipal Election Calendar, June 4, 2019 General Election Only.[6] Sample ballots are not published until May 9, 2019. *Id*. Early voting does not begin until May 22, 2019. *Id*. Defendant has adequate time to restore Plaintiffs' initiative to the ballot. The burden is on Defendant to prove to the contrary.

### IV. The Public Will Benefit By Allowing Voters to Vote.

Preliminary relief will benefit the public because it will insure that the people in Salem are allowed to exercise their First Amendment rights. Voting is fundamental to democracy. Voters should be encouraged and allowed to vote.

### V. No Security Should Be Required.

Federal Rule of Civil Procedure 65(c) states that security is required. Courts have often observed that security is not mandatory under Rule 65(c) and can be dispensed with at the discretion of the court. *See Pashby v. Delia*, 709 F.3d 307, 331-32 (4th Cir. 2013); *Moltan Co. v. Eagle-Picher Industries, Inc.,* 55 F.3d 1171, 1176 (6th Cir. 1995). This is especially true in the context of voting rights and ballot access. *See*, *e.g*., *Moore v. Brunner*, 2008 WL 232530, at *5 (S.D. Ohio 2008). No security is needed in this case, as preliminary relief threatens no financial harm to Defendant.

---

[6] https://sos.wv.gov/FormSearch/Elections/Municipal%20Elections/2019-6-4MunElecCal.pdf.pdf (last visited April 9, 2019).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully move the Court to issue preliminary relief.

Respectfully submitted,

*/s/ Lonnie C. Simmons*
Lonnie C. Simmons
West Virginia Bar No. 3406
DiPiero Simmons McGinley & Bastress, PLLC
P.O. Box 1631
Charleston, WV  25326-1631
Phone:  304-342-0133
Fax:  304-342-4605
Email:  Lonnie.Simmons@dbdlawfirm.com

Mark R. Brown
Ohio Registration No. 81941
303 East Broad Street
Columbus, OH 43215
Phone: (614) 236-6590
Fax: (614) 236-6956
Email: mbrown@law.capital.edu
*Pro hac vice pending*

Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I certify that copies of the Complaint, this Motion, the accompanying Memorandum in Support, and the attached Proposed Order, were filed using the Court's electronic filing system; I further certify that I e-mailed copies of each to Sam Harrold, Esq., at sam@mountainstatelaw.com, attorney for Defendant on this day, April 10, 2019.

*/s/ Lonnie C. Simmons*
Lonnie C. Simmons