UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF WEST VIRGINIA

**WILLIAM HYMAN, CHAD THOMPSON,**
**and MARISSA RINEHART,**

      **Plaintiffs,**

    v.                              Civil Action No.: 1:19-cv-75
                                                 (Kleeh)

**CITY OF SALEM, WEST VIRGINIA,**

      **Defendant.**

## MEMORANDUM OPINION AND ORDER GRANTING PRELIMINARY INJUNCTION [DKT. NO. 2]

Pending with the Court is the *Motion for Preliminary Injunction and/or Temporary Restraining Order* [Dkt. No. 2] filed by Plaintiffs. At an April 19, 2019, evidentiary hearing on Plaintiffs' motion came Plaintiffs by Lonnie C. Simmons and Mark R. Brown, and Defendant by Samuel H. Harrold, III. The parties submitted the issue on oral arguments and the briefs and, on that basis, the Court **GRANTS** Plaintiffs' *Motion for Preliminary Injunction* [Dkt. No. 2].[1]

---

[1] The Court issued its oral ruling at the hearing on April 19, 2019, so that the Defendant, City of Salem, could reprint election ballots in time for the June 4, 2019, election. The Court directed Defendant to include the full text of Plaintiffs' initiative, "The Sensible Marijuana Ordinance," on the election ballot, and required Plaintiffs to post a bond of $500.00 which is the estimated cost to Defendant of reprinting election ballots.

## I. FINDINGS OF FACT

Plaintiffs in this matter are William Hyman, Chad Thompson, and Marissa Rhinehart, and the Defendant is the City of Salem, West Virginia, a West Virginia municipality [Dkt. No. 1]. On or about January 14, 2019, Plaintiffs Hyman and Thompson presented to Defendant City of Salem, West Virginia, an initiative with sufficient supporting signatures calling for the decriminalization of marijuana possession in the City of Salem[2] [Id. at Exh. 1]. The initiative satisfied the procedural requirements prescribed by law, was supported by a sufficient number of voters' signatures, and fully complied with West Virginia's and the City of Salem's requirements for placing an initiative on the Defendant's June 4, 2019, election ballot [Dkt. No. 1 at ¶ 3]. On or about March 28, 2019, Plaintiffs were orally notified by Defendants that the initiative would not be included on the June 4, 2019, election ballot [Id. at ¶ 4]. Plaintiffs did not receive formal or official notice from Defendant that the initiative would be removed from

---

[2] While the parties' filings indicate that the proposed initiative calls for the decriminalization of marijuana possession in the City of Salem, the initiative does not decriminalize marijuana possession. Rather, the initiative, entitled "The Sensible Marijuana Ordinance," removes penalties for simple marijuana possession by declaring that "[a]ll marijuana charges inside city limits" are "to be issued a municipal ticket to be tried at the city municipal court." [Dkt. No. 3 at Exh. 1]. The initiative further states: "[i]t is unlawful for any person knowingly or intentionally to possess marijuana unless the marijuana was obtained legally under the West Virginia Medical Cannabis Act. Any person who violates this section is guilty of a misdemeanor and, upon conviction, such person may be confined in jail for ninety days; ninety day jail sentence shall be suspended unconditionally, or fined not more than zero dollars, or both." [Id.]. Marijuana possession remains unlawful under West Virginia State law. W. Va. Code § 60A-2-205.

the election ballot; however, Plaintiffs' attorney was informed on or about April 8, 2019, that the Defendant would not include the initiative on the June 4, 2019, election ballot [Id. at ¶¶ 6-7].

The decision by Defendant to exclude the initiative from the June 4, 2019, election ballot was premised on a March 28, 2019, memorandum from an attorney in the office of the West Virginia Secretary of State's Office to Defendants' attorney [Dkt. No. 1 at ¶ 8, Exh. 2]. The memorandum was prepared at Defendant's request in response to specific questions raised by Defendant,[3] and includes the statement that the Secretary of State "does not have authority to enforce or officially interpret the provisions discussed below, ... [but would] offer an information interpretation for consideration by interest parties" [Id. at ¶¶ 10, 14, Exh. 2].

At all relevant time, Defendant had in place a proper Charter provision, enacted pursuant to West Virginia Code § 8-12-4, allowing initiatives to be included on its local election ballots

---

[3] The memorandum prepared by the Secretary of State's Office addresses the municipal initiative and referendum processes, and the following questions presented: 1) May a municipality place an initiative on a ballot for consideration by its voters prior to the provisions of W. Va. Code § 8-12-4 being adopted and amended into a municipality's charter; 2) May a charter amendment pursuant to W. Va. Code § 8-4-7 seeking adoption of the provisions of W. Va. Code § 8-12-4 be considered by the voters on the same ballot as an initiative presented under the provisions of W. Va. Code § 8-12-4; and 3) May a municipality in WV adopt an ordinance that is contrary to current WV law, notwithstanding the fact that the initiative satisfies the procedural requirements of W. Va. Code § 8-12-4? [Dkt. No. 1 at Exh. 2].

[Dkt. No. 1 at ¶ 12]. West Virginia Code § 8-12-4 states in relevant part:

> Any city may by charter provision provide for any or all of the following:
>
> (1) The initiation of ordinances by petition bearing the signatures, written in their own handwriting, of not less than ten percent of the qualified voters of such city; [and]
>
> (2) The submission to the qualified voters of such city of a proposed ordinance at a regular municipal election or special municipal election upon petition bearing the signatures, written in their own handwriting, of not less than ten percent of the qualified voters of such city or upon resolution of the governing body of such city; ….

[Id. at ¶ 13; W. Va. Code § 8-12-4(1)-(2)].

One of the issues Defendant presented to the Secretary of State's Office was whether "a municipality in WV [may] adopt an ordinance that is contrary to current WV law, notwithstanding the fact that the initiative satisfies the procedural requirements of W. Va. Code § 8-12-4?" [Dkt. No. 1 at ¶ 14, Exh. 2]. The memorandum explained that Plaintiffs' proposed decriminalization ordinance, presented to Defendant as an initiative, would "[l]ikely" "violate the WV Constitution," since possession of marijuana remains criminal under West Virginia State law [Id. at ¶ 15, Exh. 2]. The memorandum also concludes by stating that "[t]he opinions expressed in this memorandum are non-binding and have no legal effect. This memorandum is provided merely for municipal

officials' consideration in the instant case" [Id. at ¶ 16, Exh. 2]. The memorandum did not direct Defendant to remove Plaintiffs' initiative from the June 4, 2019, election ballot [Id. at ¶ 17, Exh. 2].

Plaintiffs, William Hyman, Chad Thompson, and Marissa Rinehart ("Plaintiffs"), contend that Defendant's decision to remove Plaintiffs' initiative from the June 4, 2019, election ballot is premised on the view that the content and/or subject matter of the initiative would contradict state law, prove unconstitutional under the West Virginia Constitution, and thereby be unenforceable [Dkt. No. 1 at ¶ 19]. Plaintiffs allege that the decision to remove the initiative from the June 4, 2019, election ballot was an act of discretion, a content-based restriction on Plaintiffs' speech, and was not based on or governed by content-neutral, objective standards prescribed according to law [Id. at ¶¶ 20-21, 23]. Neither West Virginia law nor local law include objective, content-neutral standards to limit a city's discretion to select which initiatives to be included or excluded from local election ballots based on the content and/or subject matter of the proposed initiative [Id. at ¶ 28]. Plaintiffs further allege that Defendant's decision to remove Plaintiffs' initiative from the City of Salem's June 4, 2019, election ballot violates the procedural safeguards required by the First and Fourteenth Amendments of the United States Constitution when government uses

5

content and/or subject matter to restrain a person's speech [Dkt. No. 1 at ¶ 33].

Defendant City of Salem, West Virginia argues that a preliminary injunction should not issue because Plaintiffs will not experience irreparable harm and are unlikely to succeed on the merits of their case if the initiative is not placed on the June 4, 2019, election ballot [Dkt. No. 13 at 1-2]. While the Defendant concedes that an individual's First Amendment rights should not be impaired, it notes that West Virginia Code § 8-12-4 is found within Part II of Article 12 which sets forth Home Rule Powers for Cities [Id. at 2]. According to Defendant, the Municipal Home Rule Amendment, Article 6 § 39(a) of the West Virginia Constitution, defines Defendant's legislative authority and prevents Plaintiffs from undertaking an initiative in conflict with the state's general laws [Id. at 3].

## II. DISCUSSION

**A. Preliminary Injunction Standard**

"A preliminary injunction is an extraordinary remedy never awarded as of right. In each case, courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (internal quotation marks and citations omitted). In order to be awarded a preliminary injunction, a plaintiff "must establish that

he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20 (citations omitted).

**B.    West Virginia Law Governing Municipal Authority to Provide for Initiative, Referendum and Recall**

There is no question that Defendant has a Charter provision in place pursuant to West Virginia Code § 8-12-4. West Virginia Code § 8-12-4 authorizes cities in West Virginia to provide for popular initiatives:

> Any city may by charter provision provide for any or all of the following:
>
> (1) The initiation of ordinances by petition bearing the signatures, written in their own handwriting, of not less than ten percent of the qualified voters of such city;
>
> (2) The submission to the qualified voters of such city of a proposed ordinance at a regular municipal election or special municipal election upon petition bearing the signatures, written in their own handwriting, of not less than ten percent of the qualified voters of such city or upon resolution of the governing body of such city; and
>
> (3) The holding of a special municipal election to submit to the qualified voters of such city the question of the recall of an elected officer upon petition bearing the signatures, written in their own handwriting, of not less than twenty percent of the qualified voters of such city. Not more than one recall election shall be held with respect to an officer during his term of office.

W. Va. Code § 8-12-4.

West Virginia Code § 8-12-2 sets forth home rule powers in general for all cities, in accordance with the Municipal Home Rule Amendment to the Constitution of this State, and states in relevant part:

> (a) In accordance with the provisions of the "Municipal Home Rule Amendment" to the Constitution of this State, and in addition to the powers and authority granted by (i) such Constitution, (ii) other provisions of this chapter, (iii) other general law, and (iv) any existing charter, *any city shall have plenary power and authority by charter provision not inconsistent or in conflict with such Constitution, other provisions of this chapter or other general law, or by ordinance not inconsistent or in conflict with such Constitution, other provisions of this chapter, other general law or any existing charter*, to provide for the government, regulation and control of the city's municipal affairs, including, but not limited to, the following:….

W. Va. Code § 8-12-2 (emphasis added). The Defendant points to this language as support for its contention that, because the City of Salem is a municipality governed by home rule, the appropriate forum for the Plaintiffs argument is the State Legislature, because the Plaintiffs cannot undertake an initiative in conflict with the State's general laws.

C. **Applicable Legal Authority**

In addition to the statute governing a municipality's home rule authority, the Defendant relies on *Marijuana Policy Project v. U.S.*, 304 F.3d 82 (D.C. 2002), in which the United States Court of Appeals for the District of Columbia decided an issue like that before this Court. In that case, the Marijuana Policy Project

("MPP") submitted a Medical Marijuana Initiative in 2002 to the District of Columbia Board of Elections for certification. The initiative essentially advanced the legalization and/or reduction of penalties associated with the possession, use, or distribution of marijuana. Like Defendant, the District of Columbia is subject to a federal "Home Rule Act" by which Congress delegates certain legislative authority to the District. Also, like West Virginia with her municipalities, the federal Home Rule Act only allows Congress, and not the District of Columbia, to impose certain taxes, regulate permits, and to enact any law to reduce penalties with marijuana. Defendant argues that West Virginia Code § 8-12-2 and the West Virginia Constitution, Article 6 § 39(a), restrict municipalities in the same manner and deny the voters of Salem any authority to pursue ordinances inconsistent or in conflict with the laws of the state.

Plaintiffs assert that the Defendant's reliance on *Marijuana Policy Project* is misplaced, and that the decision does not support the imposition of an executive licensing system on the content of ballot initiatives. Rather, the decision simply supports the government's authority to vertically apportion powers between its various branches.[4] Plaintiffs further note that the plaintiffs in

---

[4] As Plaintiffs note in their reply brief, they do not challenge the State's authority to apportion authority over any subject between the State and local governments. Plaintiffs concede that West Virginia has that authority, and that even if Plaintiffs' initiative were to pass, it could prove "inconsistent with West Virginia law and be unenforceable" [Dkt. No. 14 at p. 3, n. 2].

*Marijuana Policy Project* did not challenge any discretion vested in executive officers to pick and choose initiative topics. Instead, plaintiffs there argued that a well-defined subject could not be reserved to the Congress. Because the prohibited subject of *Marijuana Policy Project* was well-defined, it left no discretion to ballot officials. Moreover, plaintiffs in that case made no claim of unlawful prior restraint. Here, Plaintiffs directly contend that Defendant improperly exercised discretion to exclude the proposed initiative from the June 4, 2019, election ballot based on the initiative's content.

Plaintiffs also note that *Marijuana Policy Project* addressed only whether "the First Amendment restrict[s] Congress's ability to withdraw the District [of Columbia's] authority to reduce marijuana penalties" pursuant to the Barr Amendment. *Id.* at 85. "Congress [under the Barr Amendment] denied the District the authority to 'enact … any law' reducing penalties associated with possession, use, or distribution of marijuana." *Id.* at 83. The plaintiffs claimed that whether pre- or post-election, Congress was precluded by the First Amendment from restricting the District of Columbia's power to regulate marijuana. The court in that case disagreed because "[t]he Barr Amendment merely requires that, in order to have legal effect, their [i.e., voters'] efforts must be directed to Congress rather to the D.C. legislative process." *Id.* at 270.

Plaintiffs also argue that popular initiatives and the petitioning process constitute "'core political speech.'" *See Meyer v. Grant*, 486 U.S. 414, 421 (1988)(holding that petitions of necessity involve both the expression of a desire for political change and a discussion of the merits of the proposed change, and that restrictions on this sort of speech can affect the ultimate goal of ballot access); *see also Libertarian Party of Virginia v. Judd*, 718 F.3d 308, 314 (4th Cir. 2013). Moreover, "although the Constitution does not require a state to create an initiative procedure, if it creates such a procedure, the state cannot place restrictions on its use that violate the federal Constitution …." *Taxpayers United for Assessment Cuts v. Austin*, 994 F.2d 291, 295 (6th Cir. 1993). Accordingly, restrictions on popular initiatives and the petitioning process must comply with the First and Fourteenth Amendments. *See Buckley v. American Constitutional Law Foundation*, 255 U.S. 182 (1999).

Where a restriction on speech is content-based, the Supreme Court has stated that it must pass strict judicial scrutiny. The Court has held that "[c]ontent-based laws – those that target speech based on its communicative content – are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2226 (2015)(citations omitted). Additionally, the Court has determined

that prior restraints on speech must also be accompanied by "procedural safeguards:"

> In *Freedman* [*v. Maryland*, 380 U.S. 51 (1965)], the Supreme Court set forth three procedural safeguards for a speech licensing scheme: "(1) any restraint prior to judicial review can be imposed only for a specified brief period during which the status quo must be maintained; (2) expeditious judicial review of that decision must be available; and (3) the censor must bear the burden of going to court to suppress the speech and must bear the burden of proof once in court."

*Covenant Media of South Carolina v. City of North Charleston*, 493 F.3d 421, 431 (4th Cir. 2008)(quoting *Freedman v. Maryland*, 380 U.S. 51 (1965)); *see also Wyman v. Secretary of State*, 625 A.2d 307, 312 (Me. 1993)(the potential invalidity of the subject of an initiative petition is not sufficient reason to pre-empt the process itself or to bar the discussion of the issue, because the petition is protected by the First Amendment and the Secretary advanced no compelling interest in executive oversight of the content of the petition prior to its circulation for signature).

In addressing the distinction between content-based and content-neutral restrictions on speech, the Court has held:

> Government regulation of speech is content based if a law applies to a particular speech because of the topic discussed or the idea or message expressed. The commonsense meaning of the phrase "content based" requires a court to consider whether a regulation of speech "on its face" draws distinctions based on the message a speaker conveys. Some facial distinctions based on a message are obvious, defining regulated speech by particular subject matter, and others are more subtle, defining regulated speech by its function or purpose. Both are distinctions drawn based on the

12

> message a speaker conveys, and, therefore, are subject
> to strict scrutiny.

*Reed*, 135 S. Ct. at 2227.

More recently, *Minnesota Voters Alliance v. Mansky*, 138 S. Ct. 1876 (2018) examined a similar issue in the context of subsequent punishment on speech in a non-public forum. Minnesota prohibited any person from wearing a "political badge, political button, or other political insignia … at or about the polling place." *Id*. at 1883. "Minnesota election judges – temporary government employees working the polls on Election Day – have the authority to decide whether a particular item falls within the ban." *Id*. While the election judges could not restrain the offensive attire, they were empowered to initiate punitive proceedings after the fact.[5] *Id*.

The Court held that because Minnesota failed to "articulate some sensible basis for distinguishing what may come in from what must stay out," its law violated the First Amendment. *Id*. at 1888. "[T]he unmoored use of the term 'political' in the Minnesota law, combined with haphazard interpretations the State has provided in official guidance and representations to this Court, cause Minnesota's restriction to fail even this forgiving test [applied to speech in non-public fora]." *Id*. The Court also noted that the Minnesota law required election judges to draw legal

---

[5] Prior restraints are invalid even when subsequent punishment is permitted. *See Kunz v. New York*, 340 U.S. 290, 295 (1951).

distinctions "that even the State's top lawyers struggle to solve." *Id.* at 1891. Plaintiffs contend the Defendant did the same in this matter by unilaterally answering a riddle that West Virginia's top lawyers have failed to solve.

Plaintiffs claim that Defendant's decision not to include the initiative on the June 4, 2019, election ballot fails to satisfy the strict scrutiny analysis, and constitutes an impermissible prior restraint. "Any system of prior restraints of expression comes to this Court bearing a heavy presumption against its constitutional validity." *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963). To overcome this "heavy presumption," not only must a content-based restriction satisfy strict scrutiny, it must also satisfy the First Amendment's procedural safeguards applied to prior restraints. *Covenant Media of South Carolina*, 493 F.3d at 431. However, before the procedural safeguards are considered, it must be established that the executive censor has not exercised any measure of discretion.

The First Amendment demands that licensing and permitting processes must employ established and objective standards. "A government regulation that allows arbitrary application is 'inherently inconsistent with a valid time, place, and manner regulation because such discretion has the potential for becoming a means of suppressing a particular point of view.'" *Forsyth County v. Nationalist Movement*, 505 U.S. 123, 131

(1990)(invalidating a parade permit requirement); *see also City of Lakewood v. Plain Dealer*, 486 U.S. 750, 757 (1988)(invalidating a city's permitting scheme for new racks placed on public property, and finding "that in the area of free expression a licensing statute placing unbridled discretion in the hands of a government official or agency constitutes a prior restraint and may result in censorship"(citations omitted)).

**D.  Application of Preliminary Injunction Standard**

In the Complaint [Dkt. No. 1] and *Motion for Preliminary Injunction and/or Temporary Restraining Order* [Dkt. No. 2], Plaintiffs allege First Amendment violations based on Defendant's removal of the marijuana initiative from its June 4, 2019, election ballot.  It is well-established that "[t]he loss of First Amendment rights, for even minimal periods of time, unquestionably constitutes irreparable injury."  *Elrod v. Burns*, 427 U.S. 347, 353 (1976)(citing *New York Times v. United States*, 403 U.S. 713 (1976)).

The Defendant asserts that it will be harmed if it is forced to include the initiative on its election ballot because it will create an ordinance inconsistent or in conflict with the West Virginia Constitution or the general laws of West Virginia, in violation of the home rule powers granted to Defendant in West Virginia Code § 8-12-2.  The Defendant claims that it would open itself up to litigation and liability as a result.  It also

15

contends that the public has an interest in seeing that a facially invalid and unlawful ordinance is not placed on an election ballot.

As explained to the parties at the April 19, 2019, hearing, and upon consideration of the arguments and evidence submitted by the parties as to the harms at issue, the balance tips in favor of the Plaintiffs for injunctive relief. The Court finds that Plaintiffs' claims and requested relief allege serious and substantial First Amendment issues and questions of law. Plaintiffs have demonstrated a likelihood of success on the merits of those claims. The Defendant has in place a Charter that allows initiatives to be included on its local election ballots, and Plaintiffs satisfied the procedural requirements prescribed by law to have such an initiative included. The Court need not resolve the ultimate issue of whether the initiative or ordinance proposed by Plaintiffs would be invalid or inconsistent with West Virginia State law if adopted. It is enough that Plaintiffs have made a strong showing of difficult legal questions and a likelihood of success on the merits as to the issues presented, particularly on whether the Defendant's action amounted to a content-based restriction and a prior restraint.

Plaintiffs also established that they are likely to suffer irreparable harm in the absence of preliminary relief. Plaintiffs' action was filed on April 10, 2019, after Plaintiffs informally learned that their initiative would not be placed on Defendant's

June 4, 2019, election ballot. Without Court intervention, Defendant would not have reprinted the election ballots to restore the marijuana initiative for consideration, and a separate special election would be required for citizens of the City of Salem, West Virginia to consider the measure. This element, necessary for injunctive relief to issue, is satisfied.

Finally, as to the public interest consideration, states "have considerable leeway to protect the integrity and reliability … [of the] election processes generally." *See Buckley v. American Constitutional Law Foundation, Inc.*, 525 U.S. 182, 191 (1999)(citation omitted). "[T]he First Amendment requires us to be vigilant in making those judgments, to guard against undue hindrances to political conversations and the exchange of ideas." *Id.*(citation omitted). As the United States District Court for the Southern District of West Virginia has stated, "[p]ublic interest always comes down on the side of protecting core political speech, especially where, as here, such serious and substantial questions are implicated. The public benefits from free interchange in the marketplace of ideas …." *See Nader 2000 Primary Committee, Inc., et al. v. Ken Hechler*, Civil Action No. 2:00-0839, at 10-11 (S.D. W. Va. Sept. 15, 2000). The failure to provide injunctive relief under the circumstances here would be an undue hindrance to a political conversation already underway in

the City of Salem as evidenced by the signatures of its citizenry on Plaintiffs' Initiative Petition.

### III. CONCLUSION

In this matter, Plaintiffs are likely to succeed on the merits of their claims and, given the election date, June 4, 2019, they are likely to suffer irreparable harm in the absence of preliminary relief. As discussed herein, the balance of equities tips in favor of the Plaintiffs, and an injunction best serves the public interest through the protection of political speech and the First Amendment rights of all citizens. As stated at the April 19, 2019, hearing, the Court **GRANTS** the preliminary injunction requested by Plaintiffs. It is **ORDERED** that the Defendant City of Salem, West Virginia immediately restore Plaintiffs' initiative, "The Sensible Marijuana Ordinance," to its election ballot. Further, the Defendant is preliminarily **ENJOINED** from removing an initiative from its election ballot based on the initiative's content and/or subject matter. This Order shall remain in force and effect pending final judgment on the merits.

It is so **ORDERED.**

The Clerk is directed to transmit copies of this Order to all counsel of record herein.

**DATED:** June 3, 2019

*Tom S Kleeh*
_____
THOMAS S. KLEEH
UNITED STATES DISTRICT JUDGE